## WILLIAM TURNER v. STATE.

No. A-10880.   June 30, 1948.
(195 P. 2d 767.)

154

Amos T. Hall, of Tulsa, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

JONES, J.   The defendant, William Turner, was charged by information filed in the district court of Osage county with the crime of attempted rape, was tried, convicted of assault with intent to commit rape and sentenced to serve 180 days in the county jail and pay a fine of $500, and has appealed.

The defendant, a Negro man about 31 years of age, was alleged in the information to have attempted to commit the crime of rape upon Lula Sue Davis, a Negro girl, 15 years of age.

The prosecutrix testified that she had known the defendant several months; that they attended the same church in Tulsa; that on July 11, 1946, she had started to town to pay some utility bills for her mother; that she had just left a revival meeting at the church and saw the defendant's car standing at the corner near the church; that she asked the defendant if he was going down town and told him that she would give him a car coupon if he would permit her to ride with him to the business district where she was to pay the utility bills. The defendant invited her into the automobile, but instead of going down town he made the statement that he had to drive out on North Peoria street to a lumber company to procure a box; that he continued up North Peoria and drove out into the country near an oil and gas lease in Osage county where he stopped the automobile at a secluded spot; that he there undertook to force his attentions upon her in the car by trying to hug and kiss her, but that she resisted; that he then undertook by force and violence to have sexual intercourse with her in the car, but that she scratched him, bit him, and fought him; that he finally by force and violence dragged her out of the automobile, forced her to the ground, pried her legs apart and attempted to have sexual intercourse with her, but that she continued to fight and resisted him to such an extent that he finally abandoned his efforts; that she got back into the automobile with him and they drove back toward Tulsa, and he commenced to beg her not to report what had occurred, but that she told him that she intended to tell her mother; that defendant then said that he was going to continue driving around with her until she agreed not to report what had occurred; that while the defendant was driving her around he passed within about a block of where

her mother was working and she jumped from the automobile and ran to report the incident to her mother.

The mother, together with a policeman and police matron, to whom the mother reported the alleged attack immediately, testified to the appearance of the girl at that time. Her clothing was torn and dirty, and the girl was highly nervous. The defendant was arrested the next day and he had scratches on his face, and also teeth marks where he had been bitten.

The defendant denied that he attempted to assault the prosecutrix, but admitted taking the ride with her. He testified that during the ride, the question of sexual intercourse arose and the prosecutrix agreed to commit the act with him for $5; that he only had $2 with him and that she took that and refused to give him his money back and also refused to have sexual intercourse with him; that the only time he assaulted her, if she was assaulted, was in an effort to recover his money, and that in scuffling with her he had no intention of raping her or having sexual relations with her.

Several witnesses also testified to the good reputation which the defendant bore in the community in which he resided.

Counsel who appeared for the defendant before the Criminal Court of Appeals was not the same counsel who represented him in the trial of the case.

In the brief of defendant, two propositions are presented: First, it is alleged that the court committed error in allowing the witness, Charles Cass, to testify in rebuttal concerning an alleged statement by the defendant made while in custody concerning an offense not charged in the information and that the admission in evidence of this statement was of another and separate

offense than that charged in the information and was prejudicial and improper.

On cross-examination of the defendant, counsel for the state brought out by questioning that shortly after the defendant had brought the prosecutrix back to the city of Tulsa, he procured a friend, T. J. Hale, to go and talk to the mother of the prosecutrix to see if he could not prevent her from filing charges against him.

The record discloses that the following questions and answers were then made:

"Q. You thought you had had intercourse with this girl, didn't you? A. No, sir. Q. You didn't think so? A. I sure didn't. Q. You told Mr. Cass while on the way up here from Tulsa that you had? A. No, sir, I didn't. Q. —that you had that girl, with your privates out on top of her and you were so excited you thought you had penetrated her? A. No, sir, I didn't. Mr. Tillman: We object to that as incompetent, irrelevant and immaterial. The Court: Overruled. Mr. Tillman: Exception. By Mr. Carman: Q. On the day you were brought from Tulsa by Sheriff Cass, I will ask you if you did not tell him that you had had intercourse with this girl on that occasion? Mr. Tillman Objected to as incompetent, irrelevant and immaterial and repetition and it has been asked and answered over our objection. The Court: Overruled, let him answer. Mr. Tillman: Exception. By Mr. Carman: Q. Did you tell Mr. Cass that? A. No, sir, I didn't. Q. You didn't do it? A. No, sir, I didn't."

In rebuttal Mr. Charles Cass, sheriff of Osage county, testified that he arrested the defendant, and that while transporting him from Tulsa county to Osage county, the defendant stated that he had had sexual intercourse with the complaining witness on July 11, 1946.

The contention is presented that the testimony of the sheriff was an effort to prove a separate and independent crime from that charged in the information and the general rule is cited that when a defendant is put upon trial for one offense, he should be convicted, if at all, by evidence which shows that he is guilty of that offense alone, and evidence should not be admitted to show that he has committed another wholly independent crime. Miller v. State, 13 Okla. Cr. 176, 163 P. 131, L. R. A. 1917D, 383; State v. Rule, 11 Okla. Cr. 237, 144 P. 807; Nemecek v. State, 72 Okla. Cr. 195, 114 P. 2d 492, 135 A. L. R. 1149; Herren v. State, 75 Okla. Cr. 251, 130 P. 2d 325.

We adhere to the rule contended for by the defendant as will be disclosed by reading the above citations. However, such rule is not applicable to the situation here presented. The prosecutrix testified that the defendant forced her legs apart and got on top of her, and when she reported it to her mother she thought that she had been raped. An examination, however, by the county physician did not disclose an actual penetration. The testimony of the sheriff that the defendant stated that he had committed the sexual act with the prosecutrix would have been competent as a part of the state's case in chief to show the state of mind of the defendant and that he thought he had actually completed an act of sexual intercourse. A proper predicate was laid for introducing this evidence in rebuttal by questioning the defendant concerning this statement on cross-examination. The defendant denied making the statement to the sheriff and it was proper for the sheriff to testify to such statement in rebuttal. The fact that defendant stated that he thought he had completed the crime is admissible against the defendant, even though the prosecu-

tion is instituted for the attempted crime and not for the completed offense. The completed offense includes the attempt to commit the act, but the attempt is merged in the consummated crime if the act is completed.

It is next contended that the court erred in admitting evidence in rebuttal of an alleged attempted pay off by parties other than defendant and not in the presence of the defendant. This alleged error is directed to evidence concerning the witness, H. G. Weaver, who was called to testify on behalf of the defendant. On direct examination, after inquiry by counsel for defendant, he stated that he had no interest in the outcome of the case. On cross-examination, for the purpose of showing the interest of the witness in the outcome of the case and to affect his credibility, the county attorney asked him if he didn't go over to see the mother of the prosecutrix after the case was filed and offer her $500 to try to get the case dismissed. At the time these questions were asked, no objection was interposed by counsel for the defendant. The witness denied making such offer to the mother of the prosecutrix. On re-direct examination, counsel for the defendant asked the following question:

"Q. I don't know what suggestion has been made; but have you ever heard of any offers of $500 or five cents to anybody in connection with this case? A. I haven't heard of it."

In rebuttal the mother of the prosecutrix was recalled as a witness and testified that on the night of July 11, 1946, H. G. Weaver came to her house and offered her $500 to see that defendant was not arrested or prosecuted in the case.

Since the early case of Cecil v. Territory, 16 Okla. 197, 82 P. 654, 8 Ann. Cas. 457, courts of Oklahoma have

been committed to the rule that evidence of negotiations for a settlement of the crime, by way of offers to pay money to the prosecutrix, or her parents, which are carried on by relatives or friends of defendant, is not admissible against defendant, unless it is shown that such person or persons were acting for defendant and by his direction and authority.

However, the evidence complained of was not offered for the purpose of showing an attempted compromise of the prosecution by defendant. The witness Weaver has testified on direct examination that he had no interest in the outcome of the case. The question asked on cross-examination concerning his attempt to prevent the prosecution of defendant was for the purpose of showing that he did have an interest in testifying on behalf of defendant.

By statute it is provided:

"No person shall be disqualified as a witness in any civil action or proceeding, by reason of his interest in the event of the same, as a party or otherwise, or by reason of his conviction of a crime; but such interest or conviction may be shown for the purpose of affecting his credibility." 12 O. S. 1941 § 381.

In construing this statute it has been held that on cross-examination of a witness, he may be asked as to any matter which tends to disclose his friendship or bias in favor of either party to the litigation for the purpose of affecting the credibility of the witness. Felice v. State, 18 Okla. Cr. 313, 194 P. 251; Pryor v. State, 37 Okla. Cr. 102, 257 P. 335; Durant v. State, 32 Okla. Cr. 288, 240 P. 1088; Stanfield v. State, 30 Okla. Cr. 82, 235 P. 256.

In Pryor v. State, supra, it is held:

"The cross-examination of a witness is not limited to the particular matters asked about on direct-examination. Inquiry may be made tending to show the interest, animus, bias, or prejudice of the witness. For such purpose the evidence is not collateral, but direct."

If the state had offered to show the attempted bribery of the mother of the prosecutrix by Weaver as a part of its case in chief without a showing that it was done under the authority and direction of the defendant, it would have been error; but when counsel for the defendant used Weaver as a witness on behalf of the defendant, he opened the field for inquiry by the state of the attempted bribery of the mother by the witness for the purpose of showing the interest of the witness in the outcome of the case and for the purpose of affecting his credibility.

The jury decided the disputed question of fact as to the guilt of the defendant. The fact that defendant was found guilty and escaped a penitentiary sentence may be laid to the fact that he was an ex-soldier and that prior to this alleged offense he bore an excellent reputation in the community where he lived.

The judgment and sentence of the district court of Osage county is affirmed.

BAREFOOT, P. J., and BRETT, J., concur.