LOWELL JAMES AND SIDNEY KIRKLAND, APPELLANTS, v. THE STATE OF NEVADA, RESPONDENT.

No. 19603

December 28, 1989                    784 P.2d 965

*Goodman, Stein & Chesnoff, Kenneth G. Freitas,* and *Patricia Erickson,* Las Vegas, for Appellants.

*Brian McKay,* Attorney General, Carson City; *Gregory J. Barlow,* Deputy Attorney General, and *Stephanie Tucker,* Deputy Attorney General, Las Vegas, for Respondent.

## OPINION

By the Court, YOUNG, C. J.:

At appellants' joint trial, a confidential police informant testified about meetings and conversations he had with appellants James and Kirkland in Florida and Arizona concerning their plans to use a small Nevada airplane for a trip from Arizona to Mexico. An Arizona police officer testified that he arrested the appellants upon their arrival in Arizona in the airplane. He also testified that Arizona and federal authorities were pursuing a drug smuggling investigation of appellants.

Appellants contend that the district court erred in admitting evidence of the drug smuggling investigation in Arizona. During cross-examination, defense counsel established that no charges were ever filed against appellants in Arizona and requested that the Arizona police reports be made available. Despite a warning from the the court that they were close to raising collateral issues, defense counsel elicited further testimony concerning the Arizona arrests and related matters. Thereafter, the State requested a hearing outside the presence of the jury regarding whether defense counsel had opened the door on the underlying facts and circumstances of the Arizona investigation and arrests. The court

ruled that, pursuant to NRS 48.035(3) and NRS 48.045(2), the State could proceed with questions concerning the matters raised by defense counsel's cross-examination.

Because the trial judge reasonably determined that defense counsel's cross-examination raised new issues that warranted further inquiry by the prosecution, there was no abuse of discretion in finding the testimony admissible under NRS 48.035(3). However, because the State did not establish by clear and convincing evidence that appellants committed conspiracy to import marijuana or other drug offenses, the testimony was not admissible under NRS 48.045(2). Nevertheless, because the testimony was properly admitted under NRS 48.035(3), the district court's error was harmless. Futhermore, because the trial judge was not manifestly wrong in finding that several issues were raised by defense counsel's cross-examination which were confusing and misleading to the jury, there was no abuse of discretion in his deciding that the probative value of the testimony outweighed its prejudicial effect.

Appellants also contend that the district court erred in refusing to give a special cautionary instruction to the jury regarding the credibility of a paid informant's testimony. Although the informant's testimony was corroborated by testimony from law enforcement officers, the district court should have given the jury such a cautionary instruction. *See* Williams v. State, 103 Nev. 106, 112, 734 P.2d 700, 704 (1987). However, as in *Williams,* we find the error harmless because the evidence of appellants' involvement in a false insurance claim was overwhelming, there was a general instruction on credibility given to the jury, and through cross-examination and closing arguments the informant's character and credibility were effectively exposed.

Appellants further contend that their convictions should be reversed because the State failed to prove that the crimes occurred in the proper venue. In Dixon v. State, 83 Nev. 120, 424 P.2d 100 (1967), we stated the general rule that it is sufficient if it can be concluded from the evidence as a whole that the act was committed at the place alleged in the indictment. We held that venue may be established by circumstantial evidence and need not be shown beyond a reasonable doubt. *Id.* at 121-122, 424 P.2d at 100-101 (citations omitted). Although appellants assert that a majority of states require that venue be proved beyond a reasonable doubt, we believe that any change in the level of proof currently required would more appropriately be made by the

legislature. Furthermore, there was ample circumstantial and direct evidence to prove proper venue here.

Appellants finally contend that seven other errors, combined with the errors alleged above, require reversal of their convictions under the cumulative error doctrine. However, because none of appellants' additional contentions have merit, the cumulative error doctrine does not apply.

Because we hold that appellants' contentions lack merit, we affirm the district court's judgment.

STEFFEN AND MOWBRAY, JJ., concur.

ROSE, J., dissenting, with whom SPRINGER, J., agrees:

The appellants were on trial in Nevada for aiding and abetting and conspiring in the making of a false insurance claim on the loss of an airplane. Once the plane was to be taken from Las Vegas, there was some indication that it was to be used for drug smuggling in Arizona and Mexico. The district court permitted the receipt of the suspected drug smuggling investigation and the arrest of the appellants in Arizona on this charge. This is obviously evidence of collateral bad acts committed by the appellants. Since I do not find their admission permitted by NRS 48.035(3) (Nevada's *res gestae* statute) or the exceptions stated in NRS 48.045(2) (to establish motive, intent, knowledge and the like), the evidence was improperly received and had to prejudice the appellants. For this reason, I dissent.

A confidential informant told Arizona law enforcement authorities that the appellants and others were planning to take a plane from Las Vegas with the owner's consent. They were to use the plane for two or three days before it would be destroyed. The owner would then make a false report that the plane had been stolen. Before the plane was destroyed, the appellants would fly to Mexico and bring back a load of marijuana to an airstrip in Chandler, Arizona.

Arizona law enforcement officers told Las Vegas police authorities of the plan and Las Vegas Metropolitan police officers surveilled the appellants when they arrived in Las Vegas and flew the plane from Las Vegas. Arizona officers observed the appellants arrive with the airplane in Chandler and then leave the next day. The appellants returned with the plane to Chandler, Arizona, several days later and they were arrested on Arizona charges of drug smuggling and possession of stolen property.

Arizona law enforcement authorities searched the plane and no narcotics or narcotic residue was found anywhere in the airplane or on the appellants. Since there was no evidence to support the Arizona charges, the appellants were released a few hours later without posting any bail and these charges were never pursued.

Shortly after the Arizona arrests, appellant Kirkland was offered immunity from the federal authorities if he would help law enforcement identify all others involved. He refused this offer. In Nevada, the owner reported the plane stolen three days after the appellants had taken it.

The Clark County grand jury indicted both appellants on the charges of aiding and abetting the owner in making a false insurance claim and conspiracy with the owner to make a false insurance claim. No Nevada charges were made against the appellants concerning the possession or transportation of narcotics.

At trial, the State established through several witnesses that the owner had purchased a policy of insurance covering a theft of the Nevada-based airplane and that the owner reported it stolen several days after appellants flew the plane from Las Vegas. The State then called Michael Stevens (Officer Stevens), an officer with the Arizona Department of Public Safety, who had been working with the confidential informant. He indicated that he called Las Vegas law enforcement authorities and told them that the appellants had travelled to Las Vegas and where they could be located. In response to a direct question concerning what he did as a result of the information from the confidential informant, he testified that he arrested the appellants in Arizona, but did not specify on what charges. He further testified that he had observed the appellants fly the plane into Arizona several days earlier and leave the next day. Before the plane took off, presumably on its trip to Mexico, Officer Stevens indicated that he placed a transponder, a locating beacon, on the aircraft. No objections were lodged to this testimony.

On cross-examination of Officer Stevens, the appellants' attorneys brought out that formal charges against the appellants were never pursued after their Arizona arrests and that some sort of federal immunity was offered to appellant Kirkland shortly after his arrest.

At this stage of the trial, the jury was excused and the district court heard arguments concerning the scope of redirect examination that the prosecutor would be permitted. It was the State's position that by inquiring into the failure to charge and prosecute after the Arizona arrest and the questions concerning immunity, the defense had opened the facts of the arrest and the grant of immunity to full development on redirect examination. The appellants strenuously objected to this because it would bring out evidence of other bad acts in violation of NRS 48.045(2).

The district court ruled that since the appellants had made further inquiry into the facts subsequent to arrest and particularly because the question concerning a grant of immunity had been

raised, the State would be permitted to inquire into the entire facts and circumstances concerning the investigation of drug smuggling and the offer of immunity. This was pursuant to NRS 48.035(3), Nevada's *res gestae* statute and the exceptions stated in NRS 48.045(2), which permits introduction into evidence of prior bad acts to establish motive, intent, preparation, plan, knowledge, identity, absence of mistake, or accident.

On redirect examination before the jury, Officer Stevens testified that he arrested the appellants at the Chandler airport because he had been informed that the appellants had gone south to pick up a load of marijuana and he thought that the marijuana would be aboard when the plane landed. This was part of a drug smuggling investigation that the Arizona authorities were actively pursuing. He then stated that both appellants were placed under arrest for conspiracy to import marijuana and possession of a stolen aircraft. Officer Stevens also testified that the day after the arrests, Mr. Kirkland was offered immunity from the charges filed against him if he would cooperate, but he never accepted it.

On recross-examination, the attorneys for the appellants established that no marijuana whatsoever was found on the plane and a number of facts provided by the confidential informant turned out to be false.

When the district court met outside the presence of the jury, evidence had been presented that appellants had been arrested in Chandler, Arizona, that the charges on which they were arrested had never been pursued, and that some sort of immunity had been offered to appellant Kirkland. The fact of the Arizona arrests had been brought out by the prosecution, the issue of immunity established by the appellants.

Rather than open the redirect examination to the entire facts surrounding the drug smuggling investigation and arrests, another avenue was available to the district court. This was to permit the State to establish that the Arizona arrests were not for the charges for which appellant was on trial in Nevada and that the immunity offered involved those other charges. This would have permitted the State to show that the arrests that were not pursued and the immunity offer related to other charges, but it would also have kept out the fact that the appellants were involved in some sort of major drug smuggling operation and then arrested for drug smuggling. While members of the jury may have had an idea that the appellants were using the plane for an illegal purpose, they would never have known for certain of the investigation and arrest.

Evidence of drug smuggling was not admissible under any of the exceptions stated in NRS 48.045(2); and such facts were not

established by clear and convincing evidence as is required for the admission of such collateral bad acts. Petrocelli v. State, 101 Nev. 46, 52, 692 P.2d 503, 508 (1985). Additionally, the admission of evidence of drug smuggling was clearly outweighed by its prejudicial effect.

Admitting the evidence pursuant to NRS 48.035(3) is equally flawed. Participation in the submission of a false insurance claim and drug smuggling are two distinct crimes that were alleged to have happened at different times. One crime could be described without reference to the other. In fact, the confidential informant testified of his knowledge of the plan to take the plane to Mexico and to submit a false insurance report without referring to narcotics or drug smuggling.

There was a reasonable way to let the jury know that the arrest and immunity offer involved other charges unrelated to the Nevada prosecution without going into the other bad act of drug smuggling. I believe the district court erred by permitting the prosecution to bring before the jury collateral facts of the drug smuggling investigation and that both appellants were arrested in Arizona on that charge. The fact of the appellants' Arizona arrest was brought out by the prosecution, and the appellants' attorneys merely established that those charges were not pursued. This did not open any new area for redirect examination. The issue of immunity was brought out by the appellants and the State should have been permitted to establish that the immunity offer was unrelated to the Nevada charges. The fact that the appellants may have opened the door for additional examination on the immunity issue does not mean that the door should have been thrown wide open on redirect examination and all facts concerning the drug investigation and arrest presented to the jury.

For the reasons stated, evidence of collateral bad acts was admitted in violation of NRS 48.045(2), and I would reverse this case and remand it to the district court for a new trial. I, therefore, dissent from the majority opinion affirming the appellants' convictions.